UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EDITH MAE MAY,

        Plaintiff,

      v.                                              Case No. 21-cv-0555-bhl

DR. FRANCESCA DETRANA,
WARDEN JENNIFER MCDERMOTT,
SECURITY DIRECTOR DOGS,
DEPARTMENT OF CORRECTIONS,
HEALTH SERVICES UNIT,
TAYCHEEDAH CORRECTIONAL INSTITUTION,
DR. BREWITT,
CAPTAIN MAGAW,
DEFENDANT'S INSURANCE COMPANY,
JOHN DOE INSURANCE COMPANY, and
HEALTH SERVICES UNIT INSURANCE COMPANY,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Edith Mae May, who is currently serving a state prison sentence at the Taycheedah Correctional Institution and representing herself, filed a complaint under 42 U.S.C. §1983, alleging that her civil rights were violated. This matter comes before the Court on May's motion for leave to proceed without prepaying the full filing fee and for screening of the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

May has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). May has filed a certified copy of her prison trust account statement for the six-month period immediately preceding the filing of her

complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $67.15. May's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

May alleges that, in early November 2020, while she was housed in segregation, ten inmates who were Covid-positive were moved into her cell block to quarantine. She asserts that the ventilation in the segregation unit is recycled air, so she was not comfortable with them being on her cell block. Unnamed staff allegedly told her it was safe. According to May, she got really sick from November 14, 2020 through November 29, 2020. May explains that she was tested for Covid on December 2, 2020, and the result came back positive on December 7, 2020. Dkt. No. 1 at 3-4.

May next explains that in early January 2021 she developed sores on her tongue. She notified health services and was seen by nurses seven times between January 18, 2021 and March 12, 2021. She asserts that she received an antibiotic—the first medication she was prescribed—on February 10, 2021. According to May, she continued to develop sores while on the antibiotic. She states that she was also given a steroid, but that did not help. Dkt. No. 1 at 5.

May continued to complain that the sores were "excruciatingly painful" and that she could not talk or swallow. She states that she went to see Defendant Dr. Brewitt (she does not say when), and he told her he did not know what was causing the sores. The nurse practitioner allegedly told May she had a yeast infection and gave her some mouth rinse, but May continued to develop sores. Dkt. No. 1 at 5.

May asserts that she did her own research and found some additional remedies that could be tried. She provided this list to health services. On March 2 and 12, she asked the health services

manager about seeing a specialist. May states that on April 25, 2021 she was seen by Defendant Dr. Detrana, who told her that she would not be sent to a specialist. Dr. Detrana allegedly did not respond to May's suggestions of alternative remedies; instead, she changed the subject. According to May, she received Malox and Orajel from Dr. Detrana, but no new medication. May also asserts that she asked Dr. Detrana to give her Boost, which a nurse practitioner had previously given her because it was painful to swallow, but Dr. Detrana refused because May is overweight. Dkt. No. 1 at 6-7.

According to May, she wrote four inmate complaints about this situation, but they were dismissed. She also wrote Defendant Warden McDermott, Captain Magaw, the Deputy Warden, Security Director Dogs, Captain Heidi Quackenboss, "and the Doe" about this situation, but she allegedly received no response. Dkt. No. 1 at 6.

May asserts that she is in pain and that Dr. Detrana acts like she does not care. May states that Dr. Detrana "has not done everything she could be doing to stop this pain." Dkt. No. 1 at 7.

## ANALYSIS

As an initial matter, the Court will dismiss the Department of Corrections, the Health Services Unit, and Taycheedah Correctional Institution. May cannot sue these entities because they are not "persons" within the meaning of §1983. *See Meyer v. Indiana Department of Correction*, 655 F. App'x 500, 503 (7th Cir. 2016) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)). May also fails to state a claim in connection with her allegations that ten inmates who were COVID-positive were housed in her unit. May's allegation that she tested positive for Covid weeks after the inmates were moved to her unit is too speculative to support a reasonable conclusion that unnamed officials actually knew May was at a substantial risk of contracting COVID from inmates housed in separate cells. "[T]he plain fact is that the country is

experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. Any number of intervening and/or superseding events . . . could have caused [May] to catch the virus." *Morehead v. Doe*, No. 21-cv-0423-bhl, 2021 WL 2383246, at *2 (E.D. Wis. June 10, 2021) (citing *Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *1-2 (E.D. Wis. Nov. 18, 2020)) (internal citations omitted).

Turning to May's allegations about her mouth sores, "the Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment. It asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

May has sufficiently alleged that she suffered from a serious medical condition. Therefore, the Court's analysis will focus on whether she has sufficiently alleged that each of the remaining Defendants was deliberately indifferent to that condition.

May fails to state a claim against Dr. Brewitt. She alleges only that Dr. Brewitt was unable to determine what was causing the sores, but his inability to diagnose the cause of her condition is not sufficient to assert a claim of deliberate indifference. Based on May's allegations, it appears that she was receiving antibiotics, a steroid, and mouth wash at the time she was seen by Dr. Brewitt. Based on the various efforts made to treat the sores, the Court cannot reasonably infer

that Dr. Brewitt was deliberately indifferent to her condition simply because he could not diagnose what was causing it.

May also fails to state a claim against the warden, the security director, and Captain McGaw (and the other officials she allegedly complained to but did not name as defendants in the caption of her complaint). She asserts that she wrote numerous non-medical officials complaining about her condition and the inadequacy of the care she was receiving, but none of them responded to her. "Public officials do not have a free-floating obligation to put things to rights" and "no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Further, supervisory officials are "entitled to relegate to the prison's medical staff the provision of good medical care." *Id.* (citations omitted).

Even if it were reasonable to infer from the lack of response to May's letters that these defendants failed to investigate whether May was receiving adequate care, May fails to allege that she suffered any harm as a result of a failure to investigate. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (holding that a plaintiff who sues for damages under §1983 must develop evidence of a recoverable injury). May alleges that in a two-month period she was examined by nurses seven times, examined by two different doctors, and was prescribed antibiotics, a steroid, Orajel, and Malox. Had these officials investigated May's claims, they would have learned that she was being actively cared for and they would have been entitled to rely on those treatment decisions, thus undermining any suggestion that May was harmed by an alleged failure to investigate.

Finally, whether Dr. Detrana was deliberately indifferent to May's condition is a closer call. May alleges that Dr. Detrana provided her with Malox and Orajel but refused to send her to a specialist or consider alternative remedies despite the fact that antibiotics, a steroid, and mouthwash had all failed to resolve the issue. May also alleges that despite telling Dr. Detrana

that she was in tremendous pain and having difficulty swallowing, Dr. Detrana refused to give her Boost. Construing May's allegations broadly, which the Court must do at this stage, the Court concludes that these allegations are sufficient to state a deliberate indifference claim against Dr. Detrana. The Court also will allow her to proceed on a medical negligence claim against Dr. Detrana and to join John Doe Insurance Company as a defendant. *See* WIS. STAT. §803.04(2). After the Court enters a scheduling order, May will have to use discovery to identify the name of the insurance company.

The Court makes one final observation. It is not clear from May's complaint when Dr. Detrana became involved in May's care. At one point, May alleges that she was examined by Dr. Detrana on *March* 25, 2021, Dkt. No. 1 at ¶32, but at another point, she references being seen by Dr. Detrana on *April* 25, 2021, *id*. at ¶29. May asserts that she filed grievances on November 30, 2020, March 5, 2021, and March 15, 2021. *Id.* at ¶30. She signed her complaint on April 27, 2021, and it was filed on April 30, 2021.

In light of the multiple levels of administrative review that a prisoner must complete under state law before filing a lawsuit, *see* Wis. Admin. Code §§ DOC 310.07–13, the timing of May's complaint raises the question whether she exhausted the available administrative remedies prior to filing this lawsuit, as required by 42 U.S.C. §1997e(a). A failure to exhaust administrative remedies is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 211–12 (2007), so the Court need not resolve that issue now. But if May has not completed the grievance process as to her claim against Dr. Detrana, her complaint will be subject to dismissal if Defendant raises the issue later. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). As a reminder, a prisoner cannot complete the grievance process while a lawsuit is pending—she must do so before she files her lawsuit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (affirming dismissal of lawsuit

filed two days before prisoner completed grievance process). Thus, if May did fully exhaust the administrative remedies in connection with her claim against Dr. Detrana before she filed her complaint, she may wish to voluntarily dismiss this case without prejudice so that she can complete the grievance process.

**IT IS THEREFORE ORDERED** that May's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Warden McDermott, Security Director Dogs, Department of Corrections, Health Services Unit, Taycheedah Correctional Institution, Dr. Brewitt, Defendant's Insurance Company, Health Services Unit Insurance Company, and Captain Magaw are **DISMISSED** based on May's failure to state a claim against them.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of May's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Dr. Detrana.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Dr. Detrana shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of May shall collect from her institution trust account the $282.85 balance of the filing fee by collecting monthly payments from May's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If May is

transferred to another institution, the transferring institution shall forward a copy of this Order along with May's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where May is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that May must submit the original document for each filing to the Court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

May is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 9th day of August, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge